## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CARTONERA QUEBRADILLANA INC** | **CASE NO. 11-7996(EAG)** **CHAPTER 11** |

## SECOND AMENDED PLAN

**CARTONERA QUEBRADILLANA INC** ("Debtor") hereby proposes the following **Second Amended Plan** of Reorganization (the "Amended Plan") under Section 1121 of Title 11 of the United States Code.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of this Amended Plan, the following terms shall have the meanings specified in this Article I.  A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Amended Plan as a whole and not to any particular Section, sub-Section or clause contained in the Amended Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of the Amended Plan.  The headings in the Amended Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

"Administrative Claim" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a) (1) of the Bankruptcy Code, including, without limitation:

(a)    fees and expenses of Professionals Allowed pursuant to a Final Order entered under Sections 330, 331, or 503 of the Bankruptcy Code, and

(b)    All fees and charges assessed against the Estate pursuant to 28 U.S.C. §1930.

"<u>Allowed</u>" shall mean, with reference to any Claim:

(a)     a Claim that has been listed by the Debtor in its Schedules, as amended, and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim as to which a proof of claim has been filed;

(b)     a Claim as to which a timely proof of claim has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been Allowed (whether in whole or in part) by a Final Order;

(c)     a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and Allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d)     Any Claim expressly Allowed under the Amended Plan or pursuant to the Confirmation Order.

"<u>Banco Popular or BPPR or the Bank</u>" shall mean Banco Popular de Puerto Rico.

"<u>Bankruptcy Case</u>" shall mean the Debtor's Chapter 11 case pending in the Bankruptcy Court.

"<u>Bankruptcy Code</u>" shall mean Title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Case.

"<u>Bankruptcy Court</u>" shall mean the United States Bankruptcy Court for the District of Puerto Rico where the Bankruptcy Case is pending.

"<u>Bankruptcy Rules</u>" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. §2075, and any local rules of the Bankruptcy Court.

"Bar Dates" shall mean January 12, 2012, fixed as the due date for the filing of proofs of claim by creditors asserting Claims against Debtor, other than governmental units, as stated in the "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors and Deadlines" issued by the Clerk of the Bankruptcy Court in  each Debtor's Bankruptcy Case, or otherwise be forever barred from asserting a Claim against Debtor or its property and from voting on the Amended Plan and/or sharing in distributions under the Amended Plan.

"Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the Commonwealth of Puerto Rico.

"Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

"Cash Equivalents" shall mean equivalents of Cash in the form of readily marketable securities or instruments issued by a Person other than the Debtor or an affiliate of the Debtor, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by the United States of America, commercial paper of domestic corporations carrying a Moody's Rating of "A" or better, or equivalent rating of any other nationally recognized rating service, interest-bearing certificates of deposit, or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or equivalent capital of not less than Two Hundred Million Dollars ($200,000,000.00).

"Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (i) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated,

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Claims Objection Bar Date" shall mean the later of (1) the date that such claim becomes due and payable in accordance with its terms or thirty (30) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of Debtor's Amended Plan.

"Claims Objection" means the objections to claims that have been or may be filed against the Holders (or purported Holders) of Claims.

"Class" shall mean those classes designated in Article III of the Amended Plan.

"Collateral" shall mean (a) any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable law.

"Confirmation Date" shall mean the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket in this Bankruptcy Case.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Amended Plan pursuant to the provisions of the Bankruptcy Code.

"Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or which has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

"CRIM" shall mean Centro de Recaudación de Ingresos Municipales.

"**Debtor**" shall mean CARTONERA QUEBRADILLANA INC.

"<u>Disclosure Statement</u>" shall mean the disclosure statement relating to the Amended Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

"<u>Disputed Claim</u>" shall mean:

      (a)     If no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

      (b)     if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules has been made, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

      (c)     A Claim which is a Contingent or Unliquidated Claim.

"<u>Disputed Claim Amount</u>" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

"<u>Disputed Claims Reserve</u>" shall have the meaning set forth in Section 5.6 hereof.

"<u>Distribution Record Date</u>" shall mean the Business Day preceding the Effective Date.

"<u>Effective Date</u>" shall mean the date which is thirty (30) days after the Confirmation Date, or if such date is not a Business Day, the next succeeding Business Day; provided, however, that if, as of such date, all conditions precedent to the occurrence of the Effective Date set forth in Article IX of the Amended Plan have not been satisfied or

waived pursuant to Section 9.2 of the Amended Plan, then the first Business Day immediately following the day upon which all such conditions have been satisfied or waived.

"Equity Holder" shall mean José Candelaria and Sandra Bushberg both holders of the Equity Interest in Debtor, each with 50% of Debtor's issued and outstanding common shares.

"Equity Interest" shall mean the interest of the holders of common equity securities of Debtor, and all options, warrants and rights, contractual or otherwise, to acquire any such equity securities in Debtor, as such interest exists immediately prior to the Effective Date.

"Estate" shall mean the estate created in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

"Final Decree" shall mean the order of the Court closing Debtor's case after Debtor's estate is fully administered.

"Final Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (i) the time to appeal or seek review or rehearing has expired and no appeal or petition for *certiorari*, review or rehearing is pending, or (ii) if an appeal, review, re-argument or *certiorari* of the order has been sought, the order has been affirmed or the request for review, re-argument or *certiorari* has been denied and the time to seek a further appeal, review, re-argument or *certiorari* has expired, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule

under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

"General Unsecured Claim" shall mean a Claim that is not a Secured Claim or that is not entitled to priority of payment under Section 507 of the Bankruptcy Code.

"Holder" shall mean a Person or Entity who holds a Claim or Interest.

"Impaired Class or Interest" shall mean a class or interest as to the holders of which the Amended Plan alters its legal, equitable or contractual rights.

"Internal Revenue Code" shall mean Title 26 of the United States Code, as amended from time to time.

"Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code, except that a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien.

"Order of Relief" shall mean the date of the entry of the order of relief.

"Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision thereof.

"Petition Date" shall mean September 19, 2011, the date on which Debtor filed its voluntary Chapter 11 petition with the Bankruptcy Court, pursuant to the Bankruptcy Code.

"Amended Plan" shall mean this Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code, including, without limitation, the Amended Plan Documents, if any, and all exhibits, supplements, appendices and schedules hereto and thereto, either in their present form or as the same may be altered, amended or modified from time to time.

"<u>Amended Plan Documents</u>" shall mean and include such agreements, instruments and documents as may be required to effectuate the terms of this Amended Plan.

"<u>Priority Claims</u>" shall mean any and all Claims (or portions thereof), entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

"<u>Priority Tax Claims</u>" shall mean any Claim of a governmental unit entitled to priority under Section 507(a) (8) of the Bankruptcy Code.

"<u>Professionals</u>" shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b) (4) of the Bankruptcy Code.

"<u>*Pro Rata*</u>" shall mean a proportionate share of the total distribution made at any particular time under this Amended Plan to the holders of Allowed Claims in a Class, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the total of all Allowed Claims in such Class.

"<u>Schedules</u>" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007; as such schedules, lists and statements have been or may be supplemented or amended from time to time.

"<u>Secured Claim</u>" shall mean any Claim that is secured by Collateral, to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the

Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of the amount of such setoff.

## ARTICLE II
## TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

2.1 <u>Non-Classification</u>. In accordance with Section 1123(a) (1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified in the Amended Plan. A description of the unclassified claims and the claims in each class, as well as the estimated principal amounts of each as of the Effective Date and their treatment, are set forth below.   Administrative Expense Claims are generally the ordinary and necessary costs of administering and operating during a Chapter 11 case.

2.2    <u>Administrative Expense Claims</u>.

(a)    <u>General</u>. Except as otherwise agreed to by Debtor and the holder of an Allowed Administrative Expense Claim, each such holder shall be paid in full in Cash on the later of (i) the date such Allowed Administrative Expense Claim becomes due in accordance with its terms, and (ii) the Effective Date. If Debtor or the Reorganized Debtor disputes any portion of an Administrative Expense Claim, Debtor or the Reorganized Debtor shall pay such Claim within thirty (30) days after the entry of a Final Order with respect to the allowance of such disputed Administrative Expense Claim.

(b)    <u>U.S. Trustee's Fees</u>. Any pending United States Trustee's quarterly fees shall be paid in full pursuant to 11 U.S.C. § 1930 on or before the Effective Date.

(c)    <u>Professional Compensation and Expense Reimbursement Claims</u>.

The professionals retained in Debtor's Chapter 11 cases have and will incur fees and expenses from the date of their retention through the Effective Date of the Amended Plan. It is impossible to predict the amount of additional professional administrative expense fees that will be incurred through the Effective Date of the Amended Plan. All amounts paid to professionals through the Confirmation Date, are subject to final Bankruptcy Court approval. Debtor reserves the right to contest the allowance of any professional fees.

2.3    Pre-Petition Priority Tax Claims. Priority Tax Claims are Claims entitled to priority pursuant to Section 507(a) (8) of the Bankruptcy Code. Such Priority Tax Claims may consist of taxes owing to Centro de Recaudaciones de Ingresos Municipales ("CRIM"), Municipio de San Juan and to the Department of the Treasury of Puerto Rico for withholding taxes to professionals, accrued prior to the Petition Date.

Holders of an Allowed Priority Tax Claim, secured or unsecured, shall be paid by Debtor either (i) upon such terms as may be agreed with such Holder of an Allowed Priority Tax Claim; (ii) in full in Cash on the later of the Effective Date or the date that such Allowed Priority Tax Claim would have been due if the Bankruptcy Case had not been commenced.

## ARTICLE III

## CLASSES OF CLAIMS AND EQUITY INTEREST

As of the Petition Date, Debtor had secured debt, priority unsecured and non-priority unsecured debt, as more particularly described below. The Amended Plan classifies the various claims against Debtor. A description of all classes of Claims and the

Equity Interests, the estimated principal amounts of each Class as of the Effective Date and its treatment are set forth below as follows:

Class 1 -    <u>Priority Claims</u> Class 1 shall consist of Allowed Priority Claims, excepting administrative expenses, including the fees of professionals, and Tax Claims.

Class 2-    <u>Secured Claim</u> Class 2 consists of Banco Popular's Secured Claim in the total amount of $ 2,377,694.70 (Proof of Claim No.9) and guaranteed by mortgage notes in the amounts of $300,000.00, $50,000.00 and $300,000.00 encumbering the Debtor real estate property located in Quebradilla Puerto Rico and described as follows:

<u>Rustica:</u> Parcela de Terreno localizada en barrio Cacao del término municipal de Quebradillas Puerto Rico con un área superficial de 0.8032. Finca numero 6089, inscrita al folio 63 del tomo 117 de Quebradillas Sección Segunda de Arecibo, Puerto Rico (the "Quebradillas property").

Additionally the aforementioned claim is guaranteed by mortgage notes in the amounts of $1,450,000.00 and 200,000.00 encumbering the Debtor's real estate property located at Toa Alta, and described as follows:

<u>Urbana</u>: Parcela de terreno en la Urbanización Industrial del Barrio Contorno del termino municipal de Toa Alta Puerto Rico, Finca Numero 1655 Inscrita dl folio 219del tomo 36 de Toa Alta. Registro de la Propiedad de Bayamón Sección Tercera (the "Toa Alta property", collectively with the Quebradillas property, the "Properties").

Class 3        <u>Class 3</u> consists of the secured claim of CRIM, which is estimated in the amount of $103,024.0. Debtor filed an objection to CRIM's Proof of Claim No. 5 (the "Objection to Claim") (Docket No. 108). Upon the Court's resolution of the Objection to Claim, as well as the determination of the correct allowed amount of CRIM's secured claim, the secured amount so determined will be paid within a term of 90 days after the Effective Date out of the proceeds of the sale of the equipment and/or any funds available for distribution from the operation of the Debtor. CRIM's allowed claim will be paid prior to distribution to any unsecured creditor under Class 4.

Class 4        <u>Class 4 consists of unsecured creditors</u>. The holders of which would not have recourse against the debtor outside the context of a Chapter 11 case, or which do not also hold Allowed Secured Claims requiring the holder to first pursue its available remedies against the property.

Class 5 -    <u>Holder of Interests in Debtor</u> Class **5** shall consist of Debtor's Shareholders' equity interests in Debtor. Equity holders will not retain or receive anything under the Amended Plan. Upon the entry of the Confirmation order all stocks and interest will be canceled.

## ARTICLE IV

## TREATMENT OF CLAIMS

<u>Class 1 - Priority Claims</u>

(a)    <u>Impairment and Voting</u> Class 1 is unimpaired under the Amended Plan.

Each holder of an Allowed Priority Claim is conclusively presumed to have accepted the Amended Plan and is not entitled to vote to accept or reject the Amended Plan.

(b)    Distribution  Holders of Allowed Priority Claims shall receive in full satisfaction thereof an amount in Cash equal to the Allowed amount of such Claim on the Effective Date or when such Claim becomes allowed, or as otherwise may be agreed to by each such claimant and Debtor.

Class 2 - Secured Claim of BPPR

(a)    Impairment and Voting    Class 2 is impaired under the Amended Plan. BPPR will be entitled to vote to accept or reject the Amended Plan.

(b)    Distribution

Debtor shall vest and transfer to BPPR all title, ownership and possession over the Toa Alta property on the Confirmation Date, or upon agreement of the parties at an earlier date (the "Toa Alta Transfer Date"), "as is, where is", free and clear of all liens, claims, leases, encumbrances, and interests (including, but not limited to, possession), **but subject to any CRIM liens (such CRIM liens to be cancelled upon full payment of CRIM's secured claim as finally allowed)**, all pursuant to 11 U.S.C. §§ 363(f) and (k), 1123(a)(5), 1129(b)(2)(A)(ii) and (iii), and 1141(c), as well as P.R. Civ. Code Art. 1461, in partial payment of BPPR's Secured Claim, up to the estimated amount of $825,000.00, or such other greater or lower amount to be determined pursuant to a recent appraisal report to be obtained by BPPR within the upcoming days and prior to confirmation.

As to the Quebradillas property, the Debtor will pay monthly installments to BPPR of $1,000.00 upon the filing of the instant Disclosure Statement and Amended Plan of Reorganization, and thereafter for a period of not less than three (3) months.

Upon the termination of the three (3) months period, Debtor shall vest and transfer to BPPR all title, ownership and possession over the Quebradillas property (the "Quebradillas Transfer Date") as is, where is", free and clear of all liens, claims, leases, encumbrances, and interests (including, but not limited to, possession), **but subject to any CRIM liens then existing (such CRIM liens to be cancelled upon full payment of CRIM's secured claim as finally allowed)** , all pursuant to 11 U.S.C. §§ 363(f) and (k), 1123(a)(5), 1129(b)(2)(A)(ii) and (iii), and 1141(c), as well as P.R. Civ. Code Art. 1461, in partial payment of BPPR's Secured Claim, up to the estimated amount of $325,000.00, or such other greater or lower amount to be determined pursuant to a recent appraisal report to be obtained by BPPR within the upcoming days and prior to confirmation.

Debtor shall transfer, or cause to be transferred, to BPPR, the Toa Alta and the Quebradillas property by writ, deed and/or any other means available at law on the Toa Alta and Quebradillas Transfer Date. Upon confirmation of the Amended Plan, or at any time after the Toa Alta and Quebradillas Transfer Date, BPPR may move the Court for the entry of an Order and Writ for the corresponding transfer of the Toa Alta and Quebradillas property.  Upon confirmation of the Amended Plan, and at any time after the Effective Date, BPPR shall have the right to select any lien on any of the real estate properties herein described for cancellation or partial cancellation consistent with this Amended Plan.  Also pursuant to this Amended Plan, BPPR shall cancel, or cause to be cancelled, any claims, interests, liens, leases, and encumbrances as to any of Properties, by writ, deed and/or any other means available at law on or after the Effective Date.  The transfer of the Properties and lien cancellation operations  pursuant to the Second Amended Plan will have the benefits of the exemption provided for by 11 U.S.C. §

1146(a), as further detailed in Article XII of the Amended Plan.

With regards to any CRIM liens affecting the Properties, if any, the same shall continue to affect the subject Properties until full payment of CRIM's secured claim, either by Debtor through payment under Class 3 of the Plan or otherwise. Upon compliance with full payment of CRIM's secured claim, either by Debtor through payment under Class 3 of the Plan or otherwise, either BPPR shall have the right to move the Court for the cancellation of any and all CRIM liens affecting the Properties by writ, deed and/or any other means available at law on or after the Effective Date. Notwithstanding the foregoing, the Properties shall continue to be encumbered by those CRIM liens consisting of any and all CRIM debts that may arise after the Toa Alta and Quebradillas Transfer Date, if any, as allowed by state law.

The deficiency of BPPR's Secured Claim is estimated to be in the amount of $1,277,695.0 (the "Deficiency Claim"), which shall be considered and treated as an unsecured claim in Class 4. BBPR shall be entitled to vote as a member of Class 4 by virtue of the Deficiency Claim.


Class 3 - CRIM

(a)Impairment and Voting Class 3 is impaired under the Amended Plan. CRIM will be entitled to vote to accept or reject the Amended Plan.

(b) Distribution Debtor filed an objection to CRIM's Proof of Claim No. 5 (the "Objection to Claim") (Docket No. 108). Upon the Court's resolution of the Objection to Claim, as well as the determination of the correct allowed amount of CRIM's secured claim, the secured amount so determined will be paid within a term of 90 days after the Effective Date out of the proceeds of the sale of the equipment and/or any funds

available for distribution from the operation of the Debtor. CRIM's allowed secured claim will be paid prior to distribution to any unsecured creditor under Class 4.

Class 4 - Unsecured creditors.

(a) Impairment and VotingClass 4 is impaired under the Amended Plan and will be entitled to vote to accept or reject the Amended Plan.

(b)Distribution

After completing all payment and/or treatment to creditors under Classes 1, 2 and 3 of the Plan. this class, Class 4, shall receive pro rata payments out of the proceeds of the sale of Debtor's equipment inventory, collection of accounts receivables and insurance claim's proceeds after payments of Priority Claims.

Class 5 – Equity Interests

(a) Impairment and Voting Class 5 is impaired under the Amended Plan. Holders of an equity interest in Debtor are not entitled to vote as they are deem have rejected the Amended Plan since the Amended Plan does not entitle them to receive or retain any property thereunder on account of such interests.

(b)Treatment

The shares of the Holders of Interests in Debtor will be cancelled and their interest extinguished on the Effective Date.

**ARTICLE V**

**MEANS FOR IMPLEMENTATION OF THE AMENDED PLAN**

5.1   Except as otherwise provided in the Amended Plan, Debtor will effect

payment of all Administrative Expense Claims and Convenience Claims within 30 days of the Effective date Priority Tax Claims and all Unsecured Claims, except as otherwise provided for in the Amended Plan, will be paid with the available funds originating from sale of the movable property located at debtor's principle place of business in Quebradilla, Puerto Rico.

     5.2   <u>Method of Distributions under the Amended Plan</u>.

     (a)   <u>In General</u>. Subject to Bankruptcy Rule 9010, all distributions under the Amended Plan to the Holders of Allowed Claims shall be mailed by first class mail, postage prepaid, to the address of each Holder as listed on the Master Address List of the Bankruptcy Case, as the same may have been amended, as of the Distribution Record Date, unless Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of a Claim filed by a Holder of an Allowed Claim that provides an address for such Holder different from the address reflected on the Master Address List. Debtor shall have no obligation to locate such Holders of Allowed Claims whose distributions or notices are properly mailed but nevertheless returned.

     (b)   <u>Distribution to be on Business Day</u>. Any payment or distribution required to be made under the Amended Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

     (c)   <u>Fractional Dollars</u>. Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of less than $0.50, and rounding up in the case of more than $0.50).

(d) <u>Distribution to Holders as of the Distribution Record Date</u>. As of the close of business on the Distribution Record Date, the claims register shall be closed. Debtor shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Amended Plan with only those Holders of record as of the close of business on the Distribution Record Date, unless otherwise provided for by order of the Bankruptcy Court.

5.3 <u>Objections to Disputed Claims</u>. Any objections to Claims against Debtor shall be prosecuted by Debtor, including any application to estimate or disallow Claims for voting purposes.

5.4 <u>Deadlines for Objecting to Disputed Claims</u>. Except as otherwise provided by order of the Bankruptcy Court with respect to any Claim, Debtor may file an objection to such Claim or otherwise dispute such Claim until the later of (i) the date that such Claim becomes due and payable in accordance with its terms, or (ii) thirty (30) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of the Amended Plan.

5.5 <u>Estimation of Claims</u>. Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including, without limitation, during litigation concerning the Claim or an objection thereto. Debtor shall be entitled to request that the Bankruptcy Court determine either the Allowed amount of such Claim or a maximum limitation in reference thereof. If the Bankruptcy Court determines the maximum limitation of such Claim, the determination shall not preclude Debtor from pursuing any additional

proceedings to object to any ultimate payment of the Claim. If the Bankruptcy Court determines the Allowed amount of such Claim, the amount so determined shall be deemed the amount of the Disputed Claim for all purposes under this Amended Plan. All those proceedings are cumulative and not exclusive remedies.

(b)   Investment of Cash.  Cash in the respective Disputed Claims Reserve may be invested by Debtor only in Cash Equivalents having maturities sufficient to enable Debtor to make all necessary payments to holders of Disputed Claims, in accordance to this Amended Plan, if and when, such Disputed Claims become Allowed Claims. Any interest, income, distributions or accretions on account of such investment in Cash Equivalents shall be for Debtor's benefit and account, and the payment of any income taxes or other taxes arising therefrom shall be solely the responsibility of Debtor.

(c)   Distribution Upon Allowance of Disputed Claims. The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Initial Distribution Date shall receive distributions of Cash from the Disputed Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such distributions shall be made in accordance with the Amended Plan based upon the distributions that would have been made to such holder under the Amended Plan if the Disputed Claim had been an Allowed Claim on or prior to the Initial Distribution Date. No holder of a Disputed Claim shall have any claim against the Disputed Claims Reserve until the Disputed Claim shall become an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on the Disputed Claim.

5.7   Reversion of Unclaimed Checks and Disputed Claims Reserve. The following amounts shall revert and be vested in Debtor, as to the claims to be paid under the Amended Plan, free and clear of any claim or interest of any Holder of that Claim

under the Amended Plan: (i) the amount of any checks issued for distributions under the Amended Plan that remain uncashed for a period of 90 days after the date of the distributions, and (ii) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash or Cash Equivalents in the Disputed Claims Reserve attributable to the Disputed Claim, over the amount of Cash actually distributed on account of such Disputed Claim.

## ARTICLE VI

## VOTING ON THE AMENDED PLAN

6.1    <u>Voting of Claims</u>.  Each holder of an Allowed Claim in an impaired Class which retains or receives property under the Amended Plan shall be entitled to vote separately to accept or reject the Amended Plan and indicate such vote on a duly executed and delivered ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Amended Plan.

6.2    <u>Nonconsensual Confirmation</u>.  If any impaired Class entitled to vote shall not accept the Amended Plan by the requisite statutory majorities provided for in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Amended Plan, Debtor reserves the right (i) to confirm the Amended Plan under Section 1129(b) of the Bankruptcy Code, and (ii) to amend the Amended Plan in accordance with Section 11.3 hereof to the extent necessary to obtain the entry of a Confirmation Order.

## ARTICLE VII

## EXECUTORY CONTRACTS, UNEXPIRED LEASES AND

## POST-PETITION CONTRACTS

7.1     <u>Rejection of Executory Contracts and Unexpired Leases</u>. Any executory contract or unexpired lease (other than insurance policies) which (i) has not expired by its own terms on or prior to the Confirmation Date, (ii) has not been assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, (iii) is not the subject of a motion to assume or reject which is pending on the Confirmation Date, shall be deemed <u>rejected</u> on the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

If the rejection of such an executory contract or unexpired lease results in a claim for damages by the other party or parties to such contract or lease, any claim for such damages, if not evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, or their properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for Debtor on or before forty-five (45) days following the Confirmation Date.   Debtor retains the right to object to any rejection damages claims filed in accordance with this Section.

7.2     <u>Rejection Damage Claims</u>. If the rejection of such an executory contract or unexpired lease results in a claim for damages by the other party or parties to such contract or lease, any claim for such damages, if not evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, or its properties, its agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy

Court and served upon counsel for Debtor on or before thirty (30) days following the Confirmation Date.  Debtor retains the right to further object to any rejection damages claims filed in accordance with this Section.

## ARTICLE VIII

## RELEASE AND DISCHARGE OF CLAIMS

8.1    <u>Discharge</u>. Pursuant to section 1141(d)( (3)(B) of the Bankruptcy Code, confirmation of the Amended Plan does not discharge debtor Cartonera Quebradillana Inc.  The Corporation will not continue operation upon the entry of the order of Confirmation.  By this Amended Plan, Debtor's officers and directors in office on the Confirmation Date shall have the authority to execute any instruments and documents necessary to consummate the Amended Plan and terminate the Debtor's corporate existence under applicable law.

8.2    <u>Injunction Relating to the Amended Plan</u>. As of the Effective Date, all Persons will be permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against Debtor or its Estate on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged pursuant to the Amended Plan, except to the extent expressly permitted hereunder.

8.3    <u>Cancellation of Existing Indebtedness and Liens</u>.  Except as may otherwise be provided for in the Amended Plan, on the Confirmation Date, pursuant to Sections 363(k), 1123(a)(5), 1129(b)(2)(A)(ii), and 1141(c) of the Bankruptcy Code, all Property transferred, treated, or dealt with in the Amended Plan or the Confirmation Order is free and clear of all liens, Claims, interests, and encumbrances. Except as may otherwise be provided for in the Amended Plan, on the Effective Date, all credit agreements,

promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtor, together with any and all Liens securing the same, shall be cancelled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, and Debtor and its guarantors' obligations thereunder shall be deemed cancelled, discharged and released. To the extent deemed necessary or advisable by Debtor, any holder of a Claim shall promptly provide Debtor with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing the Claim.

8.4    <u>Setoffs</u>.    Except as otherwise provided herein, nothing contained in the Amended Plan shall constitute a waiver or release by the Estate of any rights of setoff the Estate may have against any Person.

**ARTICLE IX**

**CONDITIONS PRECEDENT TO EFFECTIVE DATE**

9.1 Conditions <u>Precedent to Effectiveness</u>. The Amended Plan shall not become effective and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied or such conditions shall have been waived pursuant to Section 9.2 hereof:

(a)    The Confirmation Order, in form and substance reasonably acceptable to Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

(b)     each of the Amended Plan Documents, in form and substance reasonably acceptable to Debtor; (i) shall have been executed, delivered and, if necessary, properly recorded; (ii) shall have become effective; and (iii) shall have been filed with the Bankruptcy Court;

(c)     All actions, other documents and agreements necessary to implement the Amended Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective; and

(d)     The Estate shall have sufficient Cash to meet all Cash funding obligations under the Amended Plan required to be made on the Effective Date, including without limitation, sufficient Cash to establish the Disputed Claims Reserve as to those claims to be paid by Debtor.

9.2     <u>Waiver of Conditions</u>. Debtor may waive one or more of the conditions precedent to the effectiveness of the Amended Plan set forth in this Section, except that Debtor may not waive the condition that the Estate will have sufficient Cash to meet all of Debtor's payment and funding obligations under the Amended Plan on the Effective Date, and to establish the Disputed Claims Reserve corresponding to Debtor, as set forth in Section 5.6(a) hereof.

## ARTICLE X

## RETENTION OF JURISDICTION

10.1     <u>Retention of Jurisdiction</u>.  After the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction of the following specified matters arising out of and related to the Bankruptcy Case and the Amended Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code:

(a)     To hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims or estimate any disputed Claim;

(b)     To hear and determine any and all applications by Professionals for compensation and reimbursement of expenses pursuant to Section 2.2(c) hereof;

(c)     To determine any and all applications, motions, adversary proceedings and contested or litigated matters pending before the Bankruptcy Court on the Confirmation Date;

(d)     To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Amended Plan;

(e)     To enforce the provisions of the Amended Plan subject to the terms thereof;

(f)     to correct any defect, cure any omission, or reconcile any inconsistency in the Amended Plan, the Amended Plan Documents or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Amended Plan;

(g)  To determine such other matters as may be provided for in the Confirmation Order.

## ARTICLE XI

### PROVISIONS FOR INCLUSION IN DEBTOR'S CHARTER

11.1     Debtor shall take such action as may be necessary to the end that Debtor's charter shall contain:

(a)      provisions prohibiting Debtor from issuing non-voting stock, and providing, as to the classes of Debtor's securities possessing voting power, for the fair and equitable distribution of such power among such classes, including, in the case of any class of stock having preference over other stock with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends;

(b)      provisions which are fair and equitable and in accordance with sound business and accounting practices, with respect to the terms, positions, rights and privileges of the several classes of Debtor's securities, including without limiting the generality of the foregoing, provisions with respect to the issuance, acquisition, purchase and payments of dividends thereon; and provisions with respect to the making not less than once annually, of periodic reports to equity security holders which shall include profit and loss statements and balance sheets prepared in accordance with sound business and accounting practices; and

(c)      provisions that Debtor will not pay dividends to its shareholder, nor to any other shareholder, which may exist in the future, until creditors are paid in accordance with the Amended Plan.

## ARTICLE XII

## MISCELLANEOUS

12.1 Continuation of Injunctions or Stays until Effective Date. All injunctions or stays provided for in the Bankruptcy Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

12.2    Exemption from Transfer Taxes. Pursuant to Section 1146 of the Bankruptcy Code, the following will not be subject to any stamp tax, real estate transfer tax or similar tax:

(a)    the transfer, sale, or vesting of any real property under the terms of the Amended Plan by the Debtor, and any instruments executed and delivered in connection therewith, including without limitation any deeds;

(b)    the issuance, transfer or exchange of any security under the Amended Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Amended Plan, including any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Amended Plan;

(c)    the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money, or other security interest under, in furtherance of, or in connection with the Amended Plan;

(d)    the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Amended Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, or other similar tax or governmental assessment. Consistent with the foregoing, officials of a governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

Consistent with the foregoing, public officials in charge of inspecting public deeds for compliance of payment of any stamp taxes (such as inspectors of protocols) or officials of any governmental unit in which any instrument hereunder is to be recorded, (including without limitation, property registrars, recorders of deeds, etc.) shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, including, without limitation, any deed of transfer from the Debtor, or corrective deed related thereto executed by the Debtor, without requiring the payment of any documentary recording tax, stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

12.3    <u>Amendment or Modification of the Amended Plan</u>. Alterations, amendments or modifications of the Amended Plan may be proposed in writing by Debtor at any time prior to the Confirmation Date, provided that the Amended Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and Debtor shall have complied with Section 1125 of the Bankruptcy Code. The Amended Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Amended Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Amended Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Amended Plan shall be deemed to have accepted the Amended Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such

holders, correct any defect or omission in the Amended Plan and any exhibit thereto or in any Amended Plan Document.

12.4    <u>Severability</u>.  If, prior to the Confirmation Date, any term or provision of the Amended Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon Debtor's request, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Amended Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of the Amended Plan, as it may have been altered or interpreted in accordance with the foregoing is valid and enforceable according to its terms.

12.5 Revocation <u>or Withdrawal of the Amended Plan</u>.  Debtor reserves the right to revoke or withdraw the Amended Plan prior to the Confirmation Date. If Debtor revokes or withdraws the Amended Plan prior to the Confirmation Date, then the Amended Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against Debtor or any other Person or to prejudice in any manner Debtor's rights or those of any Person in any further proceedings involving Debtor.

12.6   <u>Binding Effect</u>.  The rights, duties and obligations of any Person named or referred to in this Amended Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

12.7   <u>Notices</u>.  All notices, requests and demands to or upon Debtor shall only be effective if in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

With a copy to:

Isabel M. Fullana
252 Ponce de León Ave.
Suite 1101
San Juan, PR 00910
Tel. 787 766-2530
Fax 787 756-7800
Email address isabelfullana@gmail.com

12.8   <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Amended Plan or the Amended Plan Documents provide otherwise, the rights and obligations arising under this Amended Plan shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Puerto Rico.

12.9   <u>Withholding and Reporting Requirements</u>. In connection with the consummation of the Amended Plan, Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority

and all distributions hereunder shall be subject to any such withholding and reporting requirements.

12.10 <u>Amended Plan Documents</u>. Upon filing with the Bankruptcy Court, the Amended Plan Documents may be inspected at the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims may obtain a copy of the Amended Plan Documents upon written request to Debtor in accordance with Section 11.7 hereof. Any Amended Plan Documents are incorporated into and made a part of the Amended Plan, as if fully set forth in full herein.

12.11 <u>Post-Confirmation Fees, Final Decree</u>. Debtor shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. §1930(a)(6) and the filing of post-confirmation reports, until a final decree is entered or as otherwise provided by the Bankruptcy Court. A final decree shall be entered as soon as practicable after initial distributions or transfer of property have commenced or executed under the Amended Plan.

12.12 <u>Headings</u>. Headings are used in the Amended Plan for convenience and reference only, and shall not constitute a part of the Amended Plan for any other purpose.

12.13 <u>Filing of Additional Documents</u>. On or before substantial consummation of the Amended Plan, Debtor shall file with the Bankruptcy Court any agreements or other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

12.14 <u>Inconsistency</u>. In the event of any inconsistency between the Amended Plan and the Disclosure Statement, the Amended Plan Documents or any other

instrument or document created or executed pursuant to the Amended Plan, the terms of the Amended Plan shall govern.

RESPECTFULLY SUBMITTED

In San Juan, Puerto Rico this 29th day of January, 2013.

_____
Jose Candelaria
President
Cartonera Quebradillana Inc.
Debtor in Possession

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the parties appearing in said systems including the US Trustee.

GARCIA-ARREGUI & FULLANA

Attorney for Debtor
252 Ponce de León Ave.
Citibank Tower, Suite 1101
Hato Rey, PR 00918
Tel.: (787) 766-2530

Fax: (787) 756-7800

E-mail: isabelfullana@gmail.com

/ S / Isabel M. Fullana

USDC No . 12802