**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 11-07996 EAG |
| CARTONERA QUEBRADILLANA, INC., | CHAPTER 11 |
| DEBTOR. | FILED & ENTERED ON 03/17/2014 |

**OPINION AND ORDER**

Pending before the court is debtor Cartonera Quebradillana, Inc.'s ("Cartonera") motion to determine the amount or legality of claim No. 5, filed by the Center for the Collection of Municipal Taxes ("CRIM", from the Spanish acronym).  (Docket No. 108 & Claims Register No. 5-1, "POC 5-1".)  For the following reasons, debtor's motion is denied, and CRIM's claim is allowed in full.

**Jurisdiction**

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico, dated July 19, 1984 (Torruella, C.J.).[1]  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

**Procedural History**

On September 19, 2011, debtor, a carton and paper products manufacturer, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (Docket No. 1.)  Debtor listed in schedule A two real properties, one in Toa Alta, the other in Quebradillas. Id.  CRIM, on November

---

[1]Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended.  All references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

2, 2011, filed proof of claim number 5 for property taxes assessed on the Toa Alta property for fiscal years 2002 through 2012, as well as various penalties and surcharges. (Claims Register No. 5-1.) The claim is for the total amount of $182,379.60, of which $103,023.84 is claimed as secured.

On January 25, 2013, debtor filed a motion to determine the amount or legality of CRIM's real property tax claim. (Docket No. 108.) Debtor contends that CRIM is time barred from collecting any property taxes corresponding to fiscal years 2002 to 2006, and that CRIM's claim for the remaining years should be reduced to take into account that various fixtures were removed from the property years ago. Id. CRIM filed its opposition on February 21, 2013, countering that there is no statute of limitations to collect real property taxes under Puerto Rico law, and that debtor did not follow the proper procedure to contest CRIM's tax assessment of its property. (Docket No. 111.) Debtor filed a reply on March 12, 2013 to further address the statute of limitations issue. (Docket No. 115.)

Debtor's amended plan, which provides for the orderly liquidation of the corporation through the transfer of the real properties to the secured creditor and the sale of any remaining equipment and inventory, was confirmed on April 12, 2013. (Docket Nos. 110 & 132.) The plan provides in pertinent part for the transfer of the Toa Alta property to the bank subject to CRIM's lien to the extent it is allowed by the court. (Docket No. 110 at p. 14.) At the confirmation hearing, the court set debtor's objection to CRIM's claim for an evidentiary hearing. (Docket No. 132.)

At the hearing held on January 24, 2014, the court heard testimony from José Candelaria, debtor's president, and Lysandra Agosto-Pedroza, an appraiser employed by CRIM. (Docket No. 166.) At the conclusion of the hearing, the parties were given an opportunity to submit further

briefs, and both parties have since done so. (Docket Nos. 168 & 169.) The matter was then taken under advisement.

## Legal Discussion

The court will briefly address the statute of limitations argument before turning to debtor's request to reduce CRIM's claim to reflect a recent change in the appraised value of the property.

## Statute of Limitations

Debtor first argues that CRIM would be barred in local court from collecting real property taxes assessed prior to 2007, and that its claim should thus be reduced accordingly. (Docket No. 108 at pp. 1-2.) Conceding that Puerto Rico law is silent as to a prescriptive term for the collection of real property taxes, debtor nevertheless asserts that in the absence of an explicit term, the court should look to an applicable analogous law and apply the prescriptive term for the collection of personal property taxes. Id. Under Puerto Rico law, Article 6.19(d)(1) of Act 83 of August 30, 1991 ("Act 83") provides that CRIM has a seven-year term to commence any proceeding to collect personal property tax. P.R. Laws Ann. tit. 21, § 5219. Debtor also invokes the doctrine of laches.

The court is not persuaded to adopt debtor's position, as it is well established that there is no statute of limitations to collect real property taxes under Puerto Rico law. See, e.g., Garcia Commercial, Inc. v. Secretario de Hacienda, 80 D.P.R. 765, 770 (1958) ("as to real estate property there is no statute of limitations")(translation ours); Salom Pizá v. Secretario de Hacienda, 92 D.P.R. 232, 237 (1965) (same); V.O. Industrial Corp. v. Komodidad Distributors, Inc., 131 D.P.R. 261, 270 (1992)("the law does not set a statute of limitations to perform the real estate appraisal and the imposition of the tax on the property")(translation ours). While debtor relies primarily on Carazo v. Srio. De Hacienda, 118 D.P.R. 306, 18 P.R. Offic. Trans. 364 (1987) and CRIM's

Administrative Order 2001-01 ("AO 2001-01") to support its argument, neither ultimately advances debtor's view. Carazo is an inheritance case involving the Puerto Rico Income Tax Act, not property tax, and is inapplicable to the present case. Although AO 2001-01 speaks of raising prescription as a defense against a tax claim, it does so only in the context of personal property tax, as both this order and the previous order that it repeals are based on a section of Act 83–Art. 6.19(d)–that deals exclusively with personal property taxes. See P.R. Laws Ann. tit. 21, §§ 5201-5240 ("System of Self-Determination as to the Personal Property Tax.") While AO 2001-01 does make a passing reference to real property taxes, it does so only once in an analysis section of the order, and appears to have been included in error.

Neither can debtor rely on laches. To invoke this doctrine, a debtor must show both an unreasonable delay by CRIM in bringing its claim and also that debtor was prejudiced. See K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 911 (1st Cir. 1989). Looking to the second prong, debtor has not provided sufficient evidence to establish that it has been prejudiced in this case. Debtor's confirmed chapter 11 plan calls for the liquidation of the corporation and for the Toa Alta property to be turned over to the secured creditor subject to CRIM's lien. (Docket Nos. 110 & 132.) Furthermore, the tax years in question are those that fall outside the statutory period, and thus are in the general unsecured pool.

**The 2013 Reappraisal**

In August 2013, debtor had the Toa Alta property reappraised to reflect the fact that various fixtures had been removed years prior after debtor had shifted its operations to the Quebradillas property. The new appraised value was less than half of what it had been previously, and the tax assessment for fiscal year 2014 dropped accordingly. In its objection, debtor seeks to have CRIM's

claim reduced to match the property's new tax assessment.  (Docket No. 108 at p. 2.)  While not entirely apparent from the face of its objection, debtor has since clarified that it is actually requesting that the court invoke its equitable powers under section 105(a) to apply the assessment based on the August 2013 appraisal retroactively, to, in effect, redetermine CRIM's claim for all tax years in question.  (Docket No. 168.)

Section 105(a) provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  While quite broad, courts have recognized several limitations to the court's equitable powers.  One such limitation is that Section 105(a) may not be invoked where the result would be inconsistent with any other provision of the Code.  See In re Windsor Constructors, Inc., 2006 Bankr. LEXIS 3942, *20 (Bankr. E.D. Pa. Dec. 18, 2006)("It is settled that § 105 does not provide authority for a bankruptcy court to expand rights afforded to parties by the Bankruptcy Code ... or to disregard provisions of the Code.")  Therefore, before deciding whether the court should use its equitable powers, we must first determine whether it is permitted to do so.

It is well established that bankruptcy courts have the authority to determine the amount or legality of any tax or penalty relating to a tax "whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competition jurisdiction."  11 U.S.C. § 505(a)(1).  This provision, however, is subject to certain exceptions.  11 U.S.C. § 505(a)(2).  As relevant here, the Code prohibits a bankruptcy judge from determining "the amount or legality of any amount arising in connection with an *ad valorem* tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired."  11 U.S.C. § 505(a)(2)(C).

Puerto Rico law, in turn, provides that a taxpayer seeking to challenge CRIM's assessment of real property taxes must do so either through an administrative review or by the filing of an action in local court. P.R. Laws Ann. tit. 21, § 5098a. An administrative review must state in writing the reasons for the challenge, include a proposed estimate of the correct tax, and, if necessary, attach any corresponding evidence or documentary support. Id. Judicial challenges must be filed in the Court of First Instance. Id. Under either procedure, the challenge must be filed within thirty days from the stamped mailing date of the tax-levying notice. Id. Further, the taxpayer is required to pay to CRIM the part of the tax he or she is not contesting, as well as 40% of the contested amount. Id. Alternatively, the taxpayer can pay the entire amount, with CRIM being obligated to reimburse the taxpayer the excess amount, with interest, in the event of a successful challenge. Id.

At the evidentiary hearing, debtor's president testified that Cartonera had ceased operations at the Toa Alta property in 2001, and that the structures and equipment located there had been sold or otherwise removed by the end of 2002. Debtor submitted photographs of the property taken in 2004 that evidence that the structures and machinery had been removed by that time. (Ex. A1-A8.) Debtor's president went on to state that in July 2009 he went to CRIM's regional office in Bayamon to request a reassessment of the property. He brought with him more recent photographs of the property that again reflected that the structures and equipment had been removed and that the property had fallen into a state of disrepair. (Ex. B1-B7.) Debtor made the request orally; he did not submit his request for reassessment in writing. This is confirmed by the testimony of CRIM's appraiser, who stated that there was no written complaint or request for reassessment in the property's file when she looked prior to the evidentiary hearing. Debtor's president testified that he was also told that debtor had to repay the tax arrearage prior to filing a challenge.

6

Based on the testimony of Mr. Candelaria and Ms. Agosto-Pedroza, both of whom the court finds credible, it is uncontested that debtor's president did not comply with the procedure or the time constraints set forth in P.R. Laws Ann. tit. 21, § 5098a.  Therefore, pursuant to Section 505(a)(2)©, the court is barred from redetermining debtor's tax liability to CRIM.  See In re Mammoth Grading, Inc., 2013 Bankr. LEXIS 1986, *9 (Bankr. E.D.N.C. May 15, 2013) ("the court concludes that § 505(a)(2)(C) precludes this court from determining the amount or legality of the property tax assessed against the debtor").  In so holding, the court acknowledges that the equities do weigh in favor of debtor on this issue, and that CRIM is, in effect, receiving a windfall by being able to claim taxes on fixtures that it is uncontested were removed from the property more than ten years ago.  The court's hands, however, are tied by the limitations imposed by Section 505(a)(2)(C).

In view of the foregoing, the court DENIES debtor's motion to determine the amount or legality of CRIM's real property tax claim.  (Docket No. 108.)  CRIM's claim is allowed in full.

In Ponce, Puerto Rico, this 17th day of March, 2014.

Edward A. Godoy
U.S. Bankruptcy Judge